# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JONATHAN SELLERS,<br><br>     Plaintiff,<br><br>v.<br><br>KEVIN CARR, CINDY O'DONNELL,<br>DANIEL COATE, and WARDEN<br>MICHAEL MEISNER,<br><br>     Defendants. | Case No. 24-CV-637-JPS<br><br><br>**ORDER** |

Plaintiff Jonathan Sellers, an inmate confined at Fox Lake Correctional Institution ("FLCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional and statutory rights. ECF No. 1. On October 11, 2024, the Court screened Plaintiff's complaint and allowed it to proceed on: (1) a First Amendment free exercise claim against Defendants Daniel Coate ("Coate"), Cindy O'Donnell ("O'Donnell"), and Kevin Carr ("Carr"); and (2) a Religious Land Use and Institutionalized Person Act ("RLUIPA") claim against Warden Michael Meisner ("Meisner"). ECF No. 7 at 5.

Now pending before the Court is Defendants' motion for summary judgment. ECF No. 17. Following an extension, Plaintiff filed a brief in opposition on October 20, 2025. ECF No. 28. On November 3, 2025, Defendants filed a reply. ECF No. 30. The motion for summary judgment is now fully briefed and ready for disposition. For the reasons described below, the Court will grant Defendants' motion for summary judgment and this case will be dismissed with prejudice.

## 1. LEGAL STANDARD – SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

In compliance with the Court's scheduling order, Defendants submitted a stipulated set of joint facts. ECF No. 19. Plaintiff submitted an unsworn declaration in support of his brief in opposition. ECF No. 29. Plaintiff did not, however, indicate that he disputed any of the proposed joint facts. As such, the Court considers the joint facts as undisputed for the purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2). As such, the Court takes the following facts from the parties' statement of undisputed facts, except where explicitly noted. The Court begins, however, with Plaintiff's allegations from his complaint as this will help to provide an overview of his claims.

### 2.1 Plaintiff's Allegations

On October 20, 2023, Plaintiff wrote to Coate asking to adhere to his belief as a Nation of Gods on Earths ("NGE"). ECF No. 1 at 2. Plaintiff's religion has: (1) supreme mathematics; (2) supreme alphabets; (3) honor/holy day observances on February 22, June 13, the last Saturday in August, and October 10; (4) civilization classes; and (5) monthly parliaments in the chapel. *Id.* Plaintiff's requests were denied. *Id.*

On approximately November 3, 2023, Plaintiff filed an inmate complaint about the theological discrimination; Plaintiff believes the Wisconsin Department of Corrections ("DOC") has discriminated against him by not allowing him to study and practice his religious beliefs. *Id.* at 2–3. O'Donnell dismissed Plaintiff's complaint on behalf of Secretary Carr. *Id.* at 3. The problem is that the DOC does not treat the NGE as a religion with the same rights as other religions. *Id.*

### 2.2 The Parties

Plaintiff is currently and was at all times relevant to this case in the custody of the DOC at FLCI. Coate has been employed with the DOC as a Chaplain at FLCI since June of 2013. O'Donnell is currently employed by the DOC. Carr was the former Secretary of the DOC. Meisner is, and was at all times relevant to this case, the Warden of FLCI.

### 2.3 Personal Religious Request Process in Corrections

As with all DOC Chaplains, Coate must follow the procedures set forth in the Division of Adult Institutions ("DAI") religious policies when it comes to offering religious accommodations. If an inmate requests a religious accommodation that is not currently approved by DAI policy, then Chaplain Coate advises them to submit a DOC-2075 "Request for New

Religious Practice or Property Item" form. Similarly, if an inmate is requesting a special diet to conform with their religious beliefs, Coate offers them a DOC-2167 "Religious Diet Request" form. Completing and submitting a DOC-2075 is an important and necessary step for the DOC administration of religious accommodations. This process allows careful analysis of inmate requests for new religious accommodations, alterations of religious policies to address systemic issues, approving new religious property items, advising individualized accommodations when appropriate, addressing dietary requests, and any other changes.

### 2.4     Nation of Gods and Earths in Corrections

Inmates in Corrections have opportunities to pursue lawful religious practices of the religion of their choice consistent with security practices and principles; rehabilitative goals of inmates; health and safety; allocation of limited resources; and responsibilities and needs of the correctional institution and facilities. Nation of Gods and Earths ("NGE"), also known as the Five Percenters or 5%ers, was formerly classified as a Security Threat Group ("STG") in Corrections. Since late 2022, this group is no longer considered a STG in Corrections. In late 2022, DAI Administrator Sarah Cooper and DAI Security Chief, Robert Miller, circulated a memo outlining modifications that were made to DOC's procedures in light of the NGE no longer being identified as a STG.

The memo highlighted the following modifications to ensure NGE was no longer considered a STG:

- NGE/Five Percenters are no longer identified as a security threat group in WICS ("Wisconsin Integrated Corrections System"), DO's internal offender management database.

- Inmates previously identified as a confirmed or suspected NGE/Five Percenters associate have had this notation removed from their WICS record.

- DAI will no longer prohibit publications or materials on the basis of NGE/Five Percenters content, without individualized review by the Security Chief.

- Staff should no longer refer inmates for possible investigation on basis of association with NGE/Five Percenters.

- Staff should not issue conduct reports for contraband that would be otherwise allowable except for the fact that it is associated with NGE/Five Percenters.

### 2.5 Interview and Information Requests

On October 21, 2023, Plaintiff wrote an Interview Information Request ("IIR") addressed to the Chapel asking for some materials about NGE. Plaintiff received a response directing him to check with the library or to order outside sources. On October 30, 2023, Plaintiff wrote an IIR addressed to the Chapel stating that he was a new member of NGE and that he would like to be provided with material about NGE. In the IIR, Plaintiff asked why he cannot practice his religion like others. Coate responded on October 31, 2023, stating, "We do not have any NGE materials in the chapel to provide you. Please submit a DOC-2075 in regards to the honor days you mentioned."

On October 30, 2023, Plaintiff wrote an inmate complaint stating that his one issue was theological discrimination. Plaintiff stated that RLUIPA requires Corrections to purchase NGE materials. The Inmate Complaint Examiner, Sara Koerner, and Coate confirmed on November 28, 2023, that Plaintiff did not fill out a DOC-2075 seeking a personal religious accommodation related to his practice of NGE. Plaintiff appealed the

decision on the inmate complaint, and O'Donnell dismissed the complaint as the decision of the Office of the Secretary.

### 2.6 Religious Literature

The DOC is not required to purchase religious supplies for incarcerated persons. The DOC does not purchase religious literature. All religious literature is donated to the Chapel from outside religious and other volunteer organizations. The Fox Lake Chapel does not currently have any NGE books or other publications. Plaintiff is welcome to purchase his own religious literature and study guides, so long as it meets DOC property requirements.

### 3. ANALYSIS

Defendants bring a motion for summary judgment seeking dismissal of both the First Amendment Free Exercise and RLUIPA claims. ECF No. 17. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will grant Defendants' motion for summary judgment and will dismiss this case.

As an initial matter, the Court notes that Plaintiff's RLUIPA and First Amendment claims share similar analytical frameworks. *Cf. Edgewood High Sch. of the Sacred Heart, Inc. v. City of Madison, Wisconsin*, 95 F.4th 1080, 1090 (7th Cir. 2024) (in the context of a RLUIPA land use case, circuit precedent permits a district court to analyze a "plaintiff's Free Exercise and RLUIPA substantial burden claims together '[g]iven the similarities between RLUIPA § 2(a)(1) and First Amendment jurisprudence'") (citing *Vision Church v. Village of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006)). As such, the Court will examine the claims together, while noting the differences in the elements of each claim.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Incarcerated persons "clearly retain protections afforded by the First Amendment," including a limited right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (quotation omitted); *Tarpley v. Allen County*, 312 F.3d 895, 898 (7th Cir. 2002). To proceed under the Free Exercise Clause, the plaintiff must show that prison officials "intentionally and substantially interfere[d] with [his] ability to practice his faith" and that the prison's restriction was not "reasonably related to a legitimate penological interest." *Garner v. Muenchow*, 715 F. App'x 533, 536 (7th Cir. 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

RLUIPA "provides that a federally funded prison may not 'impose a substantial burden on the religious exercise' of an inmate unless it can prove that doing so is the least restrictive means of furthering [a] compelling governmental interest.'" *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022) (citing 42 U.S.C. § 2000cc-1(a)). "In applying RLUIPA, courts have placed the initial burden on the plaintiff to show that he has a sincere religious belief and that his religious exercise was substantially burdened." *Blake v. West*, No. 21-CV-493-JDP, 2025 WL 915791, at *5 (W.D. Wis. Mar. 26, 2025) (citing *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)). Judge Peterson in the Western District of Wisconsin has aptly described the substantial burden analysis following the Supreme Court's decision in *Holt*: "Just to be clear about where [the *Holt* decision] leaves the substantial burden analysis: any prohibition of requested religious property will constitute a substantial burden on a religious exercise, thus placing the burden on the prison to

justify that prohibition." *Tanksley v. Litscher*, No. 15-cv-126-jdp, 2017 WL 3503377, at \*6 (W.D. Wis. Aug. 15, 2017), *aff'd*, 723 F. App'x 370 (7th Cir. 2018). Given these standards in mind, the Court addresses the threshold question of whether Defendants imposed a substantial burden on Plaintiff's religious exercise.

Here, Plaintiff's claims fail at the outset because he has failed to provide any evidence to show Defendants did anything to substantially burden Plaintiff's religion.[1] Plaintiff has made additional factual allegations in his oppositional materials. However, Plaintiff's brief in opposition is not signed, his declaration is not sworn, and these documents are therefore not admissible evidence before the Court. *See* ECF No. 28, 29; *see also Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008) (affirming district court's grant of summary judgment on exhaustion grounds, partly because "the conclusory

---

[1]The Court recognizes that Defendants also argue that Plaintiff's claims are not ripe for review because he did not fill out a DOC-2075 form seeking a personal religious accommodation related to his practice of NGE. *See* ECF No. 18 at 3. Other district courts have found that the failure to submit a DOC-2075 form constitutes the failure to exhaust administrative remedies. *See, e.g., Greybuffalo v. Wall*, No. 15-CV-8-BBC, 2015 WL 5093340, at \*1 (W.D. Wis. Aug. 28, 2015) ("Thus, if a prisoner files a lawsuit about the denial of a religious practice but he did not submit a DOC–2075 form about the practice, then the prisoner's claim about that issue must be dismissed for his failure to exhaust his administrative remedies.") (citing *Schlemm v. Frank*, No. 11–cv–272–WMC, 2014 WL 2591879, at \*9 (W.D. Wis. June 10, 2014), *aff'd in relevant part, Schlemm v. Wall*, 784 F.3d 362, 363 (7th Cir.2015).

Defendants did not, however, raise the affirmative defense of the failure to exhaust administrative remedies. *See Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005) (Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant). As such, the Court finds it more appropriate to address Plaintiff's claims on the merits.

arguments in [the prisoner's] brief opposing summary judgment were not supported by admissible evidence"); *Gonzales v. Brevard*, 531 F. Supp. 2d 1019, 1022 (W.D. Wis. 2008) ("[T]estimonial statements ... must be set forth in an affidavit that is properly notarized or in which statements are declared to be true under penalty of perjury ...."). Without any admissible evidence from Plaintiff, the Court is therefore left with Defendants' undisputed facts.

It is undisputed that the DOC changed its policy in regard to the practice of NGE in late 2022 and that the DOC no longer considered it an STG. As a result of this change, publications or materials were no longer blanket-banned on the basis of NGE content. It if further undisputed that Plaintiff wrote an interview request to the Chapel in October 2023 to request material about NGE and inquiring why he could not practice his religion like others. Coate responded on October 21, 2023, stating, "We do not have any NGE materials in the chapel to provide you. Please submit a DOC-2075 in regards to the honor days you mentioned." ECF No. 19 at 4. The DOC is not required to purchase religious supplies for incarcerated individuals. *See id.*; *see also Henderson v. Frank*, 293 F. App'x 410, 413–14 (7th Cir. 2008) (finding that RLUIPA does not require a state to purchase "devotional accessories") (citing *Cutter v. Wilkinson*, 544 U.S. 709, 720 n. 8 (2005)).

Plaintiff's complaint includes allegations that Defendants denied him religious accommodations during the timeframe of October 2023 to November 2023. It is undisputed that Plaintiff did not submit the required DOC-2075 to request accommodations during this time period. Simply requiring a prisoner to fill out a DOC-2075 form to request an accommodation does not substantially burden a Plaintiff's religion. *See Howard v. Ministries*, No. 14-C-1464, 2017 WL 6507091, at \*8 (E.D. Wis. Dec.

Page 9 of 13

18, 2017) (finding the requirement to submit a DOC-2075 form did not "constitute[] a substantial burden").

Plaintiff did submit one exhibit showing that he submitted a DOC-2075 form the following year. Plaintiff's opposition material includes a form requesting a "religious diet to adhere to [Plaintiff's] religion and its 4 honor days…." ECF No. 28-1. There are multiple issues with Plaintiff's evidence, however. To begin, this form was signed on April 20, 2024, months after Plaintiff's allegations that Defendants prevented him from practicing his religion in 2023. Additionally, Plaintiff's evidence shows that his request was responded to within days and simply asked for additional information as opposed to denying the request. *Se* ECF No. 28-1 at 3 ("There is not enough information here for me to process this DOC-2075. Please provide a detailed description of the diet you are requesting, along with the religious reasons for needing such a diet."). Nothing in the record indicates that Plaintiff ever submitted the requested information or followed up further on this request. Plaintiff's submission does not show that Defendants refused to accommodate Plaintiff's religious requests; indeed, Defendants did not even understand what Plaintiff was requesting to be able to deny or grant the request one way or the other. As such, the Court finds that Plaintiff's minimal evidence in the record fails to meet his initial burden to show that Defendants substantially burdened his religious beliefs. *See Holt*, 574 U.S. at 360–61. As such, Plaintiff's First Amendment and RLUIPA claims fail on the merits.

Finally, the Court addresses Plaintiff's claims that Coate is forcing NGE adherents to attend Islamic services and that Corrections has a policy that prefers other religions over NGE in violation of the Establishment

Clause. To begin, Defendants are correct that Plaintiff was not permitted to proceed on this claim in the screening order and that his claims are "limited to the scope of the screening order." *See Reynolds v. Haseleu*, No. 24-CV-187, 2025 WL 1807417, at *2 (E.D. Wis. July 1, 2025). Plaintiff's complaint contains no allegations about this issue that the Court can discern. *See* ECF No. 1. Moreover, even if Plaintiff was proceeding on this claim, he has not presented any evidence to support this type of claim. As discussed above, Plaintiff's failure to submit admissible evidence in his case is detrimental at the summary judgment stage. *See Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011) ("Although warned by the district court that he had to meet the motion for summary judgment with evidence, the plaintiff presented none. And so he lost.").

In sum the undisputed facts before the Court do not support a finding that Defendants substantially burdened Plaintiff's ability to practice his religion. As such, the Court finds that no reasonable jury could find in favor of Plaintiff. Thus, the Court will accordingly grant Defendants' motion for summary judgment and dismiss the case with prejudice.[2]

4. **CONCLUSION**

For the reasons explained above, the Court grants Defendants' motion for summary judgment on the merits. Plaintiff failed to rebut Defendants' evidence and has not established a genuine dispute of material fact to show that Defendants substantially burdened his religion.

---

[2]Defendants also moved for summary judgment based on qualified immunity. ECF No. 18 at 7. Because the Court grants summary judgment on the merits, the Court need not reach the question of qualified immunity.

Defendants are therefore entitled to judgment as a matter of law and this case will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment, ECF No. 17, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of March, 2026

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.